Yvonne Arvanitis Fossati (SBN 161764)
yvonne.fossati@jacksonlewis.com
Hazel U. Poei (SBN 214928)
hazel.poei@jacksonlewis.com
Martin P. Vigodnier (SBN 311834)
martin.vigodnier@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile:(213) 689-0430

Attorneys for Defendant
KPS GLOBAL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN DAVID ARREOLA CARRILLO, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KPS GLOBAL LLC, a Delaware Limited Liability Company; and DOES 1 through 100,<br><br>Defendants. | CASE NO.:<br><br>**DEFENDANT KPS GLOBAL LLC'S NOTICE REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>[Filed Concurrently with the Certification of Interested Parties, Civil Case Cover Sheet, Corporate Disclosure Statement, Declarations of Scott Mottern, Joe Harvey, Mike Eakins, Laura Helm, Glenn Kaufman, and Hazel U. Poei] |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF JUAN DAVID ARREOLA CARRILLO AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant KPS GLOBAL LLC ("Defendant"), hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446, and 1453 to remove this action from the Superior Court of California for the County of Los Angeles ("Los Angeles County Superior Court") based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant avers the following:

## PLEADINGS AND SERVICE FILED IN STATE COURT

1. Plaintiff JUAN DAVID ARREOLA CARRILLO ("Plaintiff") filed an unverified Complaint against Defendant KPS GLOBAL LLC ("Defendant") on June 15, 2022 in the Superior Court of the State of California, County of Los Angeles entitled *JUAN DAVID ARREOLA CARRILLO v. KPS GLOBAL LLC, et al.*, Case No. 22STCV19527 (the "Complaint"). A copy of the Summons, Complaint, the Los Angeles Superior Court's Order Re: Newly Assigned Cases, the Los Angeles Superior Court's Initial Status Conference Order, Plaintiff's Notice of Posting Jury Fees, ADR Information Package, the Los Angeles Superior Court's First Amended General Order and Voluntary Efficient Litigation Stipulations served on Defendant are attached as **Exhibit "A"** to the Declaration of Hazel U. Poei ("Poei Declaration" or "Poei Decl."), ¶ 2.

2. In the Complaint, Plaintiff asserts seven (7) causes of action against Defendant for: (1) failure to pay all overtime wages; (2) minimum wage violations; (3) meal period violations; (4) rest period violations; (5) wage statement violations; (6) waiting time penalties; and (7) California unfair competition law violations.  As stated in Paragraph 17 and its subparagraphs therein, Plaintiff brings his claims on behalf of himself and a putative class of similarly situated persons consisting of all current and former non-exempt employees that worked for Defendant in California at any time during the four years prior to the filing of the lawsuit through the present.

3. On August 16, 2022, Defendant was served a copy of Plaintiff's Summons and Complaint.  Poei Decl., ¶ 2.

4. On September 13, 2022, Defendant filed and served its Answer to the Complaint in the Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. Poei Decl., ¶ 3.  A copy of Defendant's Answer to the Complaint is attached as **Exhibit "B"** to the Poei Declaration, ¶ 3.

5. Attached hereto as **Exhibit "C"** are Plaintiff's Notice of Continuance of Hearing, Court Order Re Notice of Continuance of Initial Status Conference ("ISC"),

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION

Clerk's Certificate of Mailing Re Minute Order, Plaintiff's ISC Statement, and Proof of Service of Service of Summons and Complaint which are part of the state court file in this action, including a First Amended Complaint ("FAC") filed on August 22, 2022. Poei Decl., ¶ 4.

6.      As of the date of this Notice of Removal, **Exhibits "A," "B," and "C"** to the Poei Declaration constitute all of the pleadings filed and served by the Parties in connection with this matter and which are part of the state court file.  Poei Decl., ¶ 5.

## THE REMOVAL IS TIMELY

7.      This Notice of Removal has been filed within thirty (30) days after Defendant was first served with a copy of Plaintiff's Summons and Complaint on August 16, 2022.  Poei Decl. ¶ 2.  Therefore, this Notice of Removal has been filed within the time period mandated by 28 U.S.C. § 1446(b). *See Murphy Bros.*, *supra*, 526 U.S. at 354 ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

8.      In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal along with all supporting pleadings will be promptly served on Plaintiff's counsel and filed with the Clerk and the Los Angeles County Superior Court.  Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

## VENUE IS PROPER

9.      This Action was filed in the Superior Court in and for the County of Los Angeles. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391(b)(2), which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred. Poei Decl., ¶ 2 and **Exhibit "A"** attached thereto (Complaint ¶¶ 2-4, at pp. A-9, A-10).

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

10.     Removal of this action is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

11.     In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

12.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant. 28 U.S.C. §§ 1332(d) and 1453.

### A.     The Putative Class Contains More Than 100 Members.

13.     CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

14.     Here, Plaintiff's Complaint alleges that the Putative Class is "greater than one hundred (100) individuals," and further alleges "Plaintiff's claims are typical of all [Putative] Classes." Poei Decl., ¶ 2 and **Exhibit "A"** attached thereto (Complaint ¶¶ 18, 21, at pp. A-14, A-21). Plaintiff's Complaint defines each putative class separately based on and corresponding with the first six causes of action. *See id.* at ¶ 17(a)-(f), at pp. A-13–A-14 (defining the Putative Overtime, Minimum Wage, Meal Period, Rest Period, Wage Statement, and Waiting Time Penalties Classes). As used herein, the putative

classes are referred to, collectively, as the "Putative Class Members," the "Putative Class," or the "Putative Classes." The period between June 15, 2018 and the present is referred to herein as the "Putative Class Period."

15.     Defendant's records identify in excess of 140 individuals who have worked for Defendant as non-exempt employees in California between November 16, 2018 and September 14, 2022. Declaration of Scott Mottern ("Mottern Declaration" or "Mottern Decl.") ¶ 4; *see* Poei Decl., ¶ 2 and **Exhibit "A"** attached thereto (Complaint ¶ 17, at pp. A-13–A-14)(Plaintiff's proposed Putative Classes in this matter).

16.     Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.     None Of the Named Defendants Are Government Entities.**

17.     Defendant is not a State, a State official, or any other governmental entity. Declaration of Joe Harvey ("Harvey Decl.") ¶ 5.

**C.     Minimal Diversity Is Satisfied Under CAFA.**

18.     The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris* (1969) 394 U.S. 332, 340 ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant.").

19.     Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson* (9th Cir. 1986) 782 F.2d 790.

20.     For individuals, citizenship is determined by a person's domicile. *Lew v. Moss* (9th Cir. 1986) 797 F.2d 747, 749. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.* (9th Cir. 2001) 265 F.3d 853, 857. While residence and

citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship.  *State Farm Mut. Auto. Ins. Co. v. Dyer* (10th Cir. 1994)  19 F.3d 514, 519-20 (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise").

### 1.   **Plaintiff is a California Resident.**

21.   Defendant is informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California within the meaning of 28 U.S.C. § 1332(a). *See* Poei Decl., ¶ 2 and **Exhibit "A" attached thereto** (Complaint ¶ 3, at p. A-2).

### 2.   **Defendant is a Citizen of Delaware, Texas, and New York.**

22.   Defendant is a limited liability corporation.  Harvey Decl. ¶ 2.  For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of SC LLC* (4th Cir. 2010) 591 F.3d 698, 704; *Ramirez v. Carefusion Res., LLC* (S.D. Cal. 2019) 2019 U.S. Dist. LEXIS 112995 at *4-5. CAFA states that "for purposes of this subsection and [28 U.S.C. § 1453], an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). This is different from § 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage* (9th Cir. 2006) 437 F.3d 894, 899.

23.   With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend* (2010) 559 U.S. 77, 80-81. Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities.  *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the

center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

24.    At the time Plaintiff filed the Complaint and presently, Defendant has been a limited liability company organized under the laws of the Delaware. Harvey Decl., ¶ 2. At all relevant times, Defendant's company headquarters – and thus its principal place of business – has been in the State of Texas where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, and coordinate and control the company's operations and activities. Harvey Decl., ¶ 2.   Most of Defendant's executive team maintain their offices in the State of Texas, while none of its executive officers reside in the State of California.   Harvey Decl., ¶ 2.   Further, all of Defendant's owners/members are citizens of Texas or New York.  Harvey Decl., ¶ 4; Declaration of Mike Eakins ("Eakins Decl."), ¶ 4; Declaration of Laura Helm ("Helm Decl."), ¶ 4; Declaration of Glenn Kaufman ("Kaufman") Decl. ¶ 4.  Accordingly, for purposes of removal under CAFA, Defendant is citizen of the States of Delaware and Texas and is not a citizen of the State of California.

25.    Lastly, Defendant is not aware of any individual or entity being substituted in as a Doe defendant in the state court action. Poei Decl., ¶ 6. The citizenship of a Doe defendant is disregarded for purpose of removal. 28 U.S.C. § 1441(a); *see Serrano v. 180 Connect, Inc.* (9th Cir. 2007) 478 F.3d 1018, 1021. Based on the foregoing, there is complete diversity allowing removal by Defendant in that Plaintiff is a California citizen and Defendant is not. 28 U.S.C. §§ 1441, *et seq.*; *Getty Oil Corp. v. Ins. Co. of N. Am.* (5th Cir. 1998) 841 F.2d 1254, 1258.

26.    Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class, Plaintiff, was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States of Delaware and Texas. 28 U.S.C. § 1332(d)(2).

///

**D.**     <u>**The Amount In Controversy Exceeds $5,000,000 Based On A Plausible**</u> <u>**Reading Of The Allegations Of The Complaint.**[1]</u>

27.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43.

28.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* (C.D. Cal. 2002) 199 F. Supp. 2d 993, 1001 (*citing Burns v. Windsor Ins. Co.* (11th Cir. 1994) 31 F.3d 1092, 1096 (the amount in controversy analysis presumes that "plaintiff prevails on liability"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.* (9th Cir. 2002) 281 F.3d 837, 843, n.1 (*citing Willingham v. Morgan* (1969) 395 U.S. 402, 407 n.3).

29.     Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC* (E.D. Cal. 2007) 2007 U.S. Dist.

---

[1]     Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendant also denies that this action can proceed as a class or collective action. Notwithstanding the above, removal of this action pursuant to CAFA is proper given that removal is based on the allegations asserted in the Complaint.

LEXIS 31515 at *15. Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*. (9th Cir. 2022) 28 F.4th 989, 993-94 (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. LLC* (9th Cir. 2013) 728 F.3d 975, 977 ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Communs., Inc.* (9th Cir. 2010) 627 F.3d 395, 400 ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability").

30.  In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens* (2014) 135 S. Ct. 547, 554 (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions," which need not be proven. *Salter v. Quality Carriers, Inc.* (9th Cir. 2020) 974 F.3d 959, 963 (citations and internal quotation marks omitted); *Arias v. Residence Inn* (9th Cir. 2019) 936 F.3d 920, 922, 925 (defendant may rely on reasonable assumptions in estimating amount in controversy, which "need not be proven"). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware,*

*Inc.* (N.D. Cal. 2015) 2015 U.S. Dist. LEXIS 11338 at *5-6 (*quoting Dart*, 135 S. Ct. at 554). On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC* (9th Cir. 2015) 781 F.3d 1178, 1182-84.

31.     Moreover, if a plaintiff asserts statutory violations, the Court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz*, *supra*, 2007 U.S. Dist. LEXIS 31515 at *12-13 ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams* (1987) 482 U.S. 386, 392); *see also Arreola v. The Finish Line* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 170464 at *12 ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.* (C.D. Cal. 2010) 730 F. Supp. 2d 1141, 1149 ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

32.     Attorneys' fees are also taken into account to determine the jurisdictional amount. *Goldberg v. CPC Int'l, Inc.* (9th Cir. 1982) 678 F.2d 1365, 1367, cert. denied, 459 U.S. 945; *see also Alvarado v. Home Depot U.S.A., Inc.*, (S.D. Cal. 2018) 2018 U.S. Dist. LEXIS 95435 at *7-10 (post-removal attorney fees are included in the amount in controversy). "Future attorney's fees must be included in the amount in controversy." *Solorzano v. Alsco Inc.* (C.D. Cal. 2021) 2021 U.S. Dist. LEXIS 129517 at *3 (citing *Fritsch v. Swift Transp. Co. of Arizona, LLC*, (9th Cir. 2018) 899 F.3d 785, 794); *Baker v.*

*Tech Data Corp.* (C.D. Cal. 2022) 2022 U.S. Dist. LEXIS 66950 at *4 ("Contrary to [Plaintiff's] argument, 'a court **must include future attorneys' fees** recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.'") (emphasis in original) (internal citations omitted).

33.     Without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[2] conservatively places an aggregate amount in controversy exceeding **$7,424,500**, exclusive of interest and costs, as follows:

## 1.     <u>First Cause of Action: Overtime</u>

34.     Plaintiff alleges "During Plaintiff's employment with Defendant[], Plaintiff routinely worked in excess of 8 hours per workday and/or more than 40 hours per workweek but did not receive overtime compensation equal to one and one-half times his regular rate of pay for working overtime hours." Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 10, at p. A-11).  Plaintiff provides various examples of alleged off-the-clock work, including the following:

> Defendant[] also failed to compensate Plaintiff and other non-exempt employees for all hours actually worked, resulting in unpaid minimum wages and additional unpaid overtime wages. Plaintiff and other non-exempt employees often worked with adhesives and other time sensitive materials that could not be left unattended or uncompleted.  Defendant[] required non-exempt employees, including Plaintiff, to clock out for a meal period prior to the end of the fifth hour of work, regardless of whether they were actually provided with a meal period. Specifically, when a machine could not be stopped or there was no one to watch the machine, employees were forced to clock out but continue working, take their lunch in the workday, or forego lunch altogether.  As a result, Plaintiff and other non-exempt employees were not credited with all hours actually worked and were not paid all minimum and overtime wages earned.

---

[2]     *See, e.g.*, *Lucas v. Michael Kors (USA) Inc.*, (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 78510, at *8 ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION

Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 11, p. A-11).

35.     Plaintiff also alleges that he and other non-exempt employees earned non-discretionary safety bonuses and other forms of pay—which Plaintiff defines as "Incentive Pay"—that Defendant improperly excluded from their regular rate of pay, and as a result, failed to properly calculate their regular rate of pay, resulting in unpaid overtime wages.  Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 10, p. A-11).

36.     Plaintiff defines the Putative Overtime Class and Putative Overtime Class Period as follows:

> [A]ll Defendant['s] current and former non-exempt employees in California who worked more than 8.0 hours per day and/or 40.0 hours per workweek and: (i) received Incentive Pay during a corresponding time period; and/or (ii) were subject to Defendant['s] timekeeping policies and/or practices for non-exempt employees, during the four years immediately preceding the filing of this action through the present.

Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 17(a), p. A-13).

37.     Plaintiff's first cause of action seeks to recover on behalf of himself and the Putative Overtime Class Members "for the unpaid amount of overtime premiums owing, including interest thereon, statutory and civil penalties, attorneys' fees, and costs of suit[.]" Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 28, p. A-17).  Thus, based on the Complaint's various alleged instances and examples of unpaid overtime, it is plausible that Plaintiff is seeking to recover at least five hours of overtime per week for all Putative Overtime Class Members, which would place over **$1,650,000** in controversy in connection with his overtime claim ($16.50 overtime rate [$11.00[3]  x 1.5] x 5 hours per week x 20,000 workweeks).  Mottern Decl., ¶ 6.

---

[3]     For purposes of calculating potential amounts in controversy in this Notice of Removal, Defendant conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11.00 per hour).  *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION

### 2. Second Cause of Action: Minimum Wage

38.     Plaintiff's second cause of action for failure to pay minimum wages incorporates and alleges similar factual allegations concerning his first cause of action for failure to pay for all hours worked.  *See* Poei Decl., ¶ 2 and **Exhibit "A"** (Complaint, ¶¶ 10-11, 29-34, at pp. A-11, A-17–A-18).  Plaintiff defines the Putative Minimum Wage Class and Putative Minimum Wage Class Period as follows: "all Defendant['s] current and former non- exempt employees in California who were subject to Defendant['s] timekeeping policies and/or practices during the four years immediately preceding the filing of the Complaint through the present."  *Id.* at ¶ 17(b), at p. A-13.

39.     Plaintiff's second cause of action seeks to recover on behalf of himself and the Putative Minimum Wage Class Members "for the unpaid amount of minimum wages, liquidated damages, including interest thereon, statutory and civil penalties, attorneys' fees, and costs of suit[.]" Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 28, p. A-17).  Thus, based on the allegations in the Complaint, and because Plaintiff alleges his injuries are typical of the Putative Class Members, it is plausible that Plaintiff is seeking to recover at least five hours of minimum wage per week for all Putative Minimum Wage Class Members.  Plaintiff's minimum wage claim alone would place over **$2,200,000** in controversy ([$11.00 minimum hourly wage rate x 5 hours per week x 20,000 workweeks] plus an equal amount in liquidated damages).  Mottern Decl., ¶ 6.

### 3. Third Cause of Action: Meal Periods

40.     Plaintiff's third cause of action for meal period violations incorporates and alleges similar factual allegations concerning his first and second causes of action for alleged failure to pay overtime and minimum wages.  *See* Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶¶ 11-12, 35-36, at pp. A-11–12, A-18–A-19).  Plaintiff further alleges that "during a portion of the relevant time period, Defendant[] utilized a bell system that, upon information and belief, did not ring to signify the provision of a second meal period for shifts in excess of 10.0 hours,"  and that "Defendant[] failed to pay Plaintiff and other non-exempt employees an additional hour of premium pay at their

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION

respective regular rates of pay for each workday in which a meal period violation occurred, as required by Labor Code § 226.7." *Id.* at ¶ 12, at p. A-12.

41.     Plaintiff's third cause of action seeks recovery for an additional hour of premium pay to Plaintiff and the members of the Putative Meal Period Class at their respective regular rates of pay.  Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint, ¶¶ 36-37, at pp. A-18–A-19).  Plaintiff alleges Defendant failed to provide "Plaintiff and other non-exempt employees with **<u>all</u>** legally compliant meal periods[.]" *Id.* at ¶ 12, at pp. A-11–A-12 (emphasis added); *see also, id.* at ¶ 36 (alleging that Defendant "failed in their affirmative obligation to provide all of their non-exempt employees in California, including Plaintiff and members of the [Putative] Meal Period Class, with **<u>all</u>** legally compliant meal periods[.]") (emphasis added).

42.     Plaintiff defines the Putative Meal Period Class and Putative Meal Period Class Period as follows: "all Defendant['s] current and former non-exempt employees in California who[] . . . worked at least one shift in excess of 5.0 hours during the four years immediately preceding the filing of this action through the present."  Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 17(c), p. A-13).

43.     Thus, based on the allegations in the Complaint, and because Plaintiff alleges her injuries are typical of the Putative Class Members, it is plausible that Plaintiff is seeking to recover meal period premiums for five violations per week, which would place **$1,100,000** in controversy in connection with his second cause of action ($11 hourly rate x 5 meal period penalties per week x 20,000 workweeks).  Mottern Decl., ¶ 6.  *See Muniz*, *supra*, 2007 U.S. Dist. LEXIS 31515 at *12-13 ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams* (1987) 482 U.S. 386, 392); *see also Arreola*, *supra*, 2014 U.S. Dist. LEXIS 170464 at *12 ("District courts in the Ninth

Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.* (C.D. Cal. 2010) 730 F. Supp. 2d 1141, 1149 ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

### 4.    Fourth Cause of Action: Rest Periods

44.    Plaintiff's fourth cause of action for failure to provide rest periods incorporates and alleges similar factual allegations concerning his third cause of action for alleged failure to provide mean periods. *See* Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 38, at p. A-19).  Plaintiff's fourth cause of action alleges that "Defendant failed to authorize and permit Plaintiff and other non-exempt employees to take duty-free 10-minute rest periods for every four hours worked, or major fraction thereof, due to Defendant['s] unlawful rest period policies/practices." *Id.* at ¶ 13, at p. A-12.  Plaintiff's fourth cause of action further alleges as follows:

> Defendant[] failed to authorize and permit a third, 10-minute rest period when Plaintiff and other non-exempt employees worked a shift in excess of 10.0 hours. Plaintiff and other non-exempt employees were also regularly required to delay or forgo their first and second rest periods when working with adhesives or other time sensitive materials. Additionally, during a portion of the relevant time period, Defendants utilized a bell system that, upon information and belief, did not ring to signify the provision of a third rest period for shifts in excess of 10.0 hours. Defendants failed to compensate Plaintiff and other non-exempt employees with an additional hour of premium pay at their respective regular rates of pay for each workday in which a rest period violation occurred, as required by Labor Code § 226.7.

Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 13, p. A-12).

///

45.     Plaintiff defines the Putative Rest Period Class and Putative Rest Period Class Period as follows: "all Defendant['s] current and former non-exempt employees in California who worked at least one shift in excess of 3.5 hours, during the four years immediately preceding the filing of this action through the present." Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 17(d) p. A-13).

46.     Plaintiff's fourth cause of action seeks recovery for an additional hour of premium pay to Plaintiff and the members of the Putative Rest Period Class at their respective regular rates of pay. Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint, ¶¶ 13, 40 and 41, p. A-12, A-19).

47.     Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least two rest period premiums per week for all Putative Class Members, which would place **$440,000** in controversy in connection with his fourth cause of action ($11 hourly rate x 2 rest period penalties per week x 20,000 workweeks). Mottern Decl., ¶ 6.

### 5.     <u>Fifth Cause of Action: Inaccurate Wage Statements</u>

48.     For Plaintiff's fifth cause of action, Plaintiff asserts Defendant derivatively failed and continue to fail to provide Plaintiff and the Putative Wage Statement Class Members with an accurate itemized wage statements for all wages in writing showing "all overtime and minimum wages earned, and all meal and rest period premium wages owed, in violation of Labor Code § 226 *et seq.*[,]" and allegedly caused Plaintiff and the Putative Wage Statement Class Members actual injury. Poei Decl., ¶ 2 and **Exhibit "A" thereto** (Complaint ¶¶ 43, 44, at pp. A-19–A-20.) Plaintiff defines the Putative Wage Statement Class and Putative Wage Statement Class Period as follows: "all members of the [Putative] Overtime Class, [Putative] Minimum Wage Class, [Putative] Meal Period Class, and/or [Putative] Rest Period Class who received a wage statement from Defendants, during the one year immediately preceding the filing of this action from the present." *Id.* at ¶ 17(e), at A-13.   As a result of these violations, Plaintiff claims he and the Putative Wage Statement Class Members are entitled to recover penalties pursuant to

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION

Labor Code § 226 *et seq.  Id.* at p. A-20.

49.   Labor Code section 226(e)(1) provides as follows:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

50.    Based on Defendant's available records, Defendant estimates that 120 individuals were employed in the State of California within one year of Plaintiff's filing the Complaint. Mottern Decl., ¶ 5.  Thus, it is plausible that Plaintiff has placed over **$378,000** in controversy in connection with his wage statement claims ($50 per first wage statement x 120 Putative Class Members who worked between June 15, 2021 and September 14, 2022 plus $100 per each subsequent wage statement x 32 pay periods worked by Putative Class Members between June 15, 2021 and September 14, 2022, up to a maximum of $4,000 per Putative Class Member).  *See* Labor Code § 226(e)(1); *see also, Moppin v. Los Robles Reg'l Med. Ctr.* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 129574 at *10 (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas*, *supra*, 2018 U.S. Dist. LEXIS 78510 at *25 (noting "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

**6.**   **Sixth Cause of Action: Waiting Time Penalties**

51.   Plaintiff alleges that Defendant "failed to timely pay Plaintiff and members of the [Putative] Waiting Time Class all final wages due to them at the time of their

17

separation including, among other things, underpaid overtime and minimum wages owed, and meal and rest period premium wages." Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint ¶ 48, at p. A-20). Plaintiff further alleges that Defendant's "willful failure to timely pay Plaintiff and members of the [Putative] Waiting Time Class all earned wages upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due. Therefore, Plaintiff and members of the [Putative] Waiting Time Class are entitled to compensation pursuant to Labor Code § 203, plus reasonable attorneys' fees and costs of suit." *Id.* at ¶ 48, at pp. A-20–A-21.

52.    Labor Code section 203(a) provides as follows:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

53.    During the applicable three-year statute of limitations period (*i.e.*, June 15, 2019 to the present), at least 65 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. Mottern Decl., ¶ 7. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$171,600** in controversy in connection with his claim for waiting time penalties (65 Putative Class Members x $11.00 hourly rate x 8 hours x 30 days).

## 7.    Plaintiff's Alleged Attorneys' Fees

54.    Plaintiff also seeks an unspecified amount of attorneys' fees in connection with her putative class and collective claims, which the Court must consider and include in the amount in controversy. Poei Decl., ¶ 2 and **Exhibit "A"** thereto (Complaint at Prayer for Relief, p. A-22); *Solorzano*, *supra*, 2021 U.S. Dist. LEXIS 129517 at *3 ("Future attorney's fees must be included in the amount in controversy.") (citations omitted); *Baker, supra*, 2022 U.S. Dist. LEXIS 66950 at *4 ("Contrary to [Plaintiff's] argument, 'a court must include future attorneys' fees recoverable by statute or contract when

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION

assessing whether the amount-in-controversy requirement is met.'") (internal citations omitted).

55.   Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g.*, *McGuigan v. City of San Diego* (2010) 183 Cal. App. 4th 610, 638 (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.* (2010) 182 Cal. App. 4th 278, 287, 296 (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. Cal.* (2008) 45 Cal. 4th 243, 249 (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.* (9th Cir. 2018) 888 F.3d 413, 414-15.

56.   "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 275 at *23; *see also Herrera v. Carmax Auto Superstores Cal., LLC* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 188729 at *12 ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.* (C.D. Cal. 2017) 2017 U.S. Dist. LEXIS 162856, at *16 ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.* (C.D. Cal. 2017) 2017 U.S. Dist. LEXIS 20975 at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a

potential fee award of 25% of the value of certain of the substantive claims.").

57.    The Court should therefore consider attorneys' fees of at least **$1,484,900**, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 48 above. *See, e.g.*, *Oda v. Gucci Am., Inc.* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 1672 at *11-13 (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

58.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (over **$7,424,500**) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

| | |
|---|---|
| First Cause of Action: Overtime | $1,650,000 |
| Second Cause of Action: Minimum Wages | $2,200,000 |
| Third Cause of Action: Meal Periods | $1,100,000 |
| Fourth Cause of Action: Rest Periods | $440,000 |
| Fifth Cause of Action: Inaccurate Wage Statements | $378,000 |
| Sixth Cause of Action: Waiting Time Penalties | $171,600 |
| **Minimum Amount-In-Controversy:** | **$5,939,600** |
| **Minimum Amount-In-Controversy with Attorneys' Fees:** | **$7,424,500** |

///
///
///

**THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING CLAIMS**

59.     As discussed, Plaintiff filed an FAC on August 22, 2022.  Poei Decl., ¶ 4 and **Exhibit "C"** attached thereto (FAC, pp. C-1–C-20).  Plaintiff's FAC adds an additional, eighth cause of action for civil penalties under the California Private Attorneys General Act of 2004 ("PAGA").  *Id.* and **Exhibit "C"** attached thereto (FAC, ¶¶ 56-60, pp. C-1, C-17–C-18).  The factual and class action allegations in the Complaint essentially mirror the same in the FAC.  *Compare id.* at ¶ 2 and **Exhibit "A"** attached thereto (Complaint, ¶¶ 9-23, pp. A-11–A-23) *with id.* at ¶ 4 and **Exhibit "C"** attached thereto (FAC, ¶¶ 9-23, pp. C-6–C-11).  Further, Plaintiff's eighth cause of action for civil penalties under PAGA incorporates his class claims.  *See id.* at ¶ 4 and **Exhibit "C"** attached thereto (FAC, ¶¶ 56, p. C-17).

60.     Accordingly, Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's additional cause of action under PAGA as it arises from the same nucleus of operative facts (*i.e.*, the same transactions or occurrences), namely, Plaintiff's employment with Defendant.  *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1070 (9th Cir. 2019) (district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [] original jurisdiction that they form part of the same case or controversy."); *Navarro v. City of Fontana*, Case No. EDCV 09-1525-VAP (DTBx), 2010 U.S. Dist. LEXIS 147141 at *5-6 (C.D. Cal. Jan. 6, 2010) ("It would be inefficient to require the California Superior Court to duplicate the work of this Court by becoming familiar with these same facts. Furthermore, the existence of two separate actions relating to the same nucleus of facts would present a risk of inconsistent rulings. Additionally, it would be inconvenient to all parties to be forced to litigate two separate actions relating to the same nucleus of facts.").

## CONCLUSION

61.     Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA

requirements, 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and respectfully requests that this Court retain jurisdiction for all further proceedings.

WHEREFORE, Defendant prays the above action now pending against it in the Superior Court of the State of California for the County of Los Angeles be removed to this Court.

Dated:  September 15, 2022                                JACKSON LEWIS P.C.

By:     /s/ Hazel U. Poei
        Yvonne Arvanitis Fossati
        Hazel U. Poei
        Martin P. Vigodnier

        Attorneys for Defendant
        KPS GLOBAL LLC

4893-1094-2771, v. 6

DEFENDANT KPS GLOBAL LLC'S REMOVAL OF ACTION